**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRENDAN NASBY, | No. 21-15044 |
| *Plaintiff-Appellant*, | D.C. No. 3:17-cv-00447-MMD-CLB |
| v. | |
| STATE OF NEVADA; JAMES COX; E. V. MCDANIEL; ADAM ENDEL; DEBRA BROOKS; RENEE BAKER, Warden; HOWARD SKOLNIK; QUENTIN BYRNES; TARA CARPENTER; WILLIAM SANDIE; ROBERT LEGRAND, Warden, SAC #49; HAROLD BYRNE, SAC #49; ADAM WATSON, SAC #49; MICHAEL FLETCHER, SAC #49, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted May 11, 2023
Pasadena, California

Filed August 18, 2023

Before:  Andrew D. Hurwitz and Ryan D. Nelson, Circuit
Judges, and Yvette Kane,[*] District Judge.

Opinion by Judge R. Nelson;
Concurrence by Judge Hurwitz

## SUMMARY[**]

### Prisoner Civil Rights / Access to the Courts

Affirming the district court's summary judgment in favor of Nevada prison officials, the panel held that plaintiff, a Nevada prisoner, lacked standing to pursue a claim that the prison officials denied him meaningful access to the courts under the First Amendment.

Plaintiff alleged that the practice of requiring lockdown inmates to use a paging system to request law library materials—instead of physically visiting the law library—deprived him of access to the courts because the paging system required inmates to request the specific source by name, and thereby prevented him from discovering a Nevada Supreme Court decision that supported his claim for post-conviction relief.  Specifically, plaintiff, who was convicted by a jury of first-degree murder, argued that the Nevada Supreme Court's decision in *Nika v. State*, 198 P.3d 839, 850 (Nev. 2008), resurrected his habeas claim related to a jury

---

[*] The Honorable Yvette Kane, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

instruction on mens rea, but because of the paging system he did not learn of *Nika* until seven years after it was decided, at which point he had already filed three unsuccessful habeas petitions.  Upon discovering *Nika,* plaintiff filed additional petitions in 2016 and 2019, which were denied.

The panel held that because plaintiff could not show actual injury—the hindrance of a nonfrivolous underlying legal claim—he lacked standing.  Plaintiff offered no reason, beyond speculation, to think that the Nevada courts would have reached a different decision had he filed a habeas claim within a year of *Nika* instead of seven years later.  The Nevada Court of Appeal rejected plaintiff's 2016 habeas claim for a reason unrelated to the delay, finding that the evidence presented at trial was sufficient to establish beyond a reasonable doubt that he acted with the requisite mens rea.  His habeas claim therefore would have failed no matter when it was raised.  Because the claim had no chance of success, he did not suffer an actual injury sufficient to confer standing to pursue an access-to-courts claim.

Concurring in the result, Judge Hurwitz agreed with the majority that the district court's judgment should be affirmed.  In his view, plaintiff had Article III standing to raise a claim arising out of the alleged denial of access to the prison library, but the claim failed on the merits.

## COUNSEL

Curt Cutting (argued), Supervising Attorney; Mark A. Kressel, and Rebecca G. Powell; Horvitz & Levy LLP, Burbank, California; Tyler Lisea and Mary Beyer (argued), Certified Law Students; Pepperdine Caruso School of Law Ninth Circuit Appellate Advocacy Clinic, Malibu, California; for Plaintiff-Appellant.

Chris W. Davis (argued), Deputy Attorney General; Frank A. Toddre II, Senior Deputy Attorney General; D. Randall Gilmer, Chief Deputy Attorney General; Aaron D. Ford, Attorney General; Nevada Attorney General's Office, Las Vegas, Nevada; Gregory L. Zunino, Deputy Solicitor General; Nevada Attorney General's Office, Carson City, Nevada; for Defendants-Appellees.

Athul K. Acharya, Public Accountability, Portland, Oregon, for Amicus Curiae Public Accountability.

**OPINION**

R. NELSON, Circuit Judge:

Brendan Nasby, a Nevada prisoner, sued Nevada prison officials for denying him meaningful access to the courts under the First Amendment. The district court granted summary judgment to the prison officials on jurisdictional and merits grounds. Because Nasby cannot show actual injury—the hindrance of a nonfrivolous underlying legal claim—he lacks standing.

I

A jury convicted Nasby of first-degree murder in October 1999. Nasby was housed in a lockdown unit at Ely State Prison (ESP) from 2006 to 2014, before his transfer to Lovelock Correctional Center (LCC), where he remains.

ESP and LCC require lockdown inmates to use a paging system instead of physically visiting the law library. To access materials through the paging system, lockdown inmates fill out request forms that are reviewed by inmate library workers. If the forms are filled out correctly, library workers retrieve the requested legal materials for delivery to the lockdown units. At ESP, inmate law clerks are prohibited from visiting lockdown inmates. And at both facilities, inmate library workers receive little training and may not give legal advice. Any inmate with a high school diploma and a discipline-free record for six months is eligible to work in the law library.

Although the request forms include a "Topical Search" section, or allow research by "issue," Nasby produced affidavits from ESP and LCC inmate library workers stating that the only way to receive legal materials through the

paging system was to request the specific source by name. He also produced evidence that his requests were rejected for lack of specificity. In Nasby's view, the specificity required by the paging system made it impossible to discover new materials an inmate did not already know about.

Nasby argues that the paging system deprived him of access to the courts by preventing him from discovering a Supreme Court of Nevada decision that supported his claim for post-conviction relief. When Nasby was convicted in 1999, the mens rea jury instruction for first-degree murder stated: "If the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the premeditation is followed by the act constituting the killing, it is wilful [sic], deliberate and premeditated murder." *Kazalyn v. State*, 825 P.2d 578, 583 (Nev. 1992). Under the *Kazalyn* instruction, premeditation includes willfulness and deliberation, making premeditation the only required mens rea in practice. *See id.*

In 2000, after Nasby's conviction but before his direct appeal, the Supreme Court of Nevada rejected the *Kazalyn* instruction because it "defin[ed] only premeditation and fail[ed] to provide deliberation with any independent definition." *Byford v. State*, 994 P.2d 700, 713 (Nev. 2000). *Byford* detailed new jury instructions that separately defined willfulness, deliberation, and premeditation. *See id.* at 714.

In his direct appeal, Nasby asserted that *Byford* invalidated his conviction obtained under the *Kazalyn* instruction. While his appeal was pending, however, the Supreme Court of Nevada held that *Byford* applied only prospectively. *Garner v. State*, 6 P.3d 1013, 1025 (Nev. 2000), *overruled on other grounds by Sharma v. State*, 56

P.3d 868, 872 (Nev. 2002). The Supreme Court of Nevada accordingly affirmed Nasby's conviction because *Byford* did not apply.

Nasby filed his first habeas petition in state court in 2002, again arguing that the district court erred by using the *Kazalyn* instruction. The state court cited *Garner* to deny his petition, and the Supreme Court of Nevada affirmed. Nasby then filed a federal habeas petition that was stayed to permit him to exhaust state proceedings, but which was later denied.

In 2008, the Supreme Court of Nevada partially reversed *Garner*, explaining that "*Garner* erroneously afforded *Byford* complete prospectivity because as a matter of due process, the change effected in *Byford* applies to convictions that were not yet final at the time of the change." *Nika v. State*, 198 P.3d 839, 850 (Nev. 2008). According to Nasby, *Nika* resurrected his *Byford* claim. Unfortunately for Nasby, the parties agree that he was required to re-raise his *Byford* claim within one year after *Nika* was decided.[1]

But Nasby did not learn about *Nika* until seven years after it was decided. At that point, Nasby had already filed two more unsuccessful habeas petitions in the Nevada courts. Upon discovering *Nika*, Nasby filed a fourth habeas petition in 2016 based on *Byford*. *See Nasby v. State*, No. 70626, 2017 WL 3013073, at *1 (Nev. Ct. App. July 12, 2017). The Nevada trial court denied his petition as

---

[1] Re-raising the claim in another state habeas petition within one year of *Nika*'s issuance would not have rendered Nasby's petition timely—it would have allowed him to argue that he established good cause to excuse the late filing of a second or successive habeas petition. *See Rippo v. State*, 423 P.3d 1084, 1097 (Nev. 2018) (citing Nev. Rev. Stat. § 34.726 (2020)).

procedurally barred by laches and as untimely, successive, and an abuse of the writ, concluding that Nasby failed to show good cause and prejudice to overcome the procedural bar. *See id.* The Nevada Court of Appeals affirmed on the same grounds and also because, "[e]ven assuming inadequate access to legal materials constituted good cause to re-raise the jury instruction issue in this petition, "the evidence presented at trial was sufficient to establish beyond a reasonable doubt that" Nasby had the requisite mens rea and could not, therefore, establish actual prejudice or a fundamental miscarriage of justice. *Id.* at *2. Nasby filed a fifth post-conviction petition in 2019 that was denied for similar reasons. *See Nasby v. State*, No. 78744-COA, 2020 WL 1848262, at *3 (Nev. Ct. App. Apr. 10, 2020).

Nasby then sued multiple ESP and LCC employees in federal court under 42 U.S.C. § 1983. He sought an injunction for defendants to supplement the paging system with someone trained in the law, or allow inmates access to the prison's law library; a declaratory judgment that he was denied meaningful access to the courts; and damages.

The parties cross-moved for summary judgment. The district court adopted the magistrate judge's report and recommendation, concluding that Nasby did not show actual injury sufficient to confer standing, that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred his claim, and that his access-to-courts claim otherwise failed on the merits. Nasby timely appealed.

## II

We have jurisdiction under 28 U.S.C. § 1291 and review a grant of summary judgment de novo. *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021). Summary judgment is appropriate when the movant shows

"no genuine dispute as to any material fact" and "entitle[ment] to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III

The judicial power of federal courts only extends to "cases" or "controversies."  U.S. Const. art. III, § 2, cl. 1.  A critical component of the case-or-controversy requirement is standing.  Standing requires, as relevant here, an "injury in fact," which is the "invasion of a legally protected interest [that] is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted).  "The party invoking federal jurisdiction bears the burden of establishing" standing.  *Id.* at 561.

To show actual injury for an access-to-courts claim, an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  This is because "meaningful access to the courts is the touchstone."  *Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 823 (1977)).  While "adequate law libraries or adequate assistance from persons trained in the law" confer meaningful access, *Bounds*, 430 U.S. at 828, the access right is not "an abstract, freestanding right to a law library or legal assistance," *Lewis*, 518 U.S. at 351.  "[T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Id.*  Only the hindrance of "direct appeals from the convictions for which they were incarcerated," "habeas petitions," and "civil rights actions" implicate the access right recognized in *Bounds*.  *Id.*

at 354.  The hindered claim must also be "nonfrivolous," as "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all . . . ."  *Id.* at 353 n.3.  A claim is nonfrivolous in this context if the plaintiff can "show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

Nasby's *Byford*-based habeas claim is not arguable because raising it earlier would not have changed the outcome of his state habeas petition.**[2]**  Although he claims injury from the seven-year delay in discovering *Nika*, the Nevada courts rejected his fourth petition for a reason unrelated to the delay.  That denial renders his habeas claim based on *Byford* not "arguable" and therefore, in this context, frivolous.

Nasby's 2016 petition faced multiple hurdles: it was untimely, successive, and had to overcome a presumption of prejudice to Nevada.  *See Nasby*, 2017 WL 3013073, at \*1. For all these reasons, the 2016 petition "was procedurally barred absent a demonstration of good cause and actual prejudice."  *Id.*  The Nevada Court of Appeals "assum[ed] inadequate access to legal materials constituted good cause

---

[2] Importantly, because Article III standing "must exist at the commencement of the litigation," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000), and because standing requires an "injury [that] would likely be redressed by judicial relief," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021), Nasby's standing to pursue his § 1983 claim necessarily turned on whether, at the time he commenced this action, he had suffered an injury redressable by judicial relief.  But he did not because, when he filed this action, he already knew that the delay in discovering *Nika* had no impact on his ability to pursue an arguable habeas claim based on *Byford*.  "We thus are dealing with a class of cases in which the issue of standing and the merits . . . are inseparable."  *Walters v. Edgar*, 163 F.3d 430, 435 (7th Cir. 1998).

to re-raise the jury instruction issue in this petition." *Id.* at *2. But it affirmed the denial of habeas relief for lack of actual prejudice because "the evidence presented at trial was sufficient to establish beyond a reasonable doubt" that Nasby acted with the requisite mens rea. *Id.*[3]

Even if Nasby instantly learned of *Nika* and timely asserted his revived *Byford* claim, his petition would have faced (at minimum) the time bar: Nevada law requires post-conviction petitions to be "filed within 1 year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within 1 year after the appellate court . . . issues its remittitur." Nev. Rev. Stat. § 34.726(1); *accord Nasby*, 2017 WL 3013073, at *1. A petitioner filing outside a year can excuse the delay with good cause, meaning "[t]hat the delay is not the fault of the petitioner; and [t]hat the dismissal of the petition as untimely will unduly prejudice the petitioner." § 34.726(1); *accord Nasby*, 2017 WL 3013073, at *1. Assuming *Nika*'s change in law excuses the delay, Nasby still would have failed the undue prejudice requirement. Because "the evidence presented at trial was sufficient to establish beyond a reasonable doubt" that Nasby had the requisite mens rea even under *Byford*, he cannot show undue prejudice. *Nasby*, 2017 WL 3013073, at *2. His *Byford*-based habeas claim would have failed no matter when it was raised. Because the claim had no chance of success, it was not arguable. *See Christopher*, 536 U.S. at 416; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (claims

---

[3] For the same reason, the court concluded that no fundamental miscarriage of justice would result from the failure to consider Nasby's claims. *See Nasby*, 2017 WL 3013073, at *2.

"completely devoid of merit" do not create standing). Thus, any delay in raising the claim did not injure him.

Nasby maintains that his claim is arguable and that the denial of his 2016 petition is irrelevant because a nonfrivolous claim need not succeed. But this ex ante approach ignores the Supreme Court's guidance that frivolousness tracks the hindered claim's value: "Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value—arguable claims are settled, bought, and sold." *Lewis*, 518 U.S. at 353 n.3. The Seventh Circuit elaborated on this guidance: "In other words, even if the claim, had it been pressed to judgment, would have failed, there is always a chance, provided the claim is not frivolous, that it would have been settled before then." *Walters*, 163 F.3d at 434. Given the key requirement of a nonfrivolous claim, the Seventh Circuit cautioned that the practical settlement value of "pure nuisance suits founded on completely frivolous claims" should be disregarded. *Id.*

While a court may pause before concluding that an untested claim is meritless, here we know the value of Nasby's claim. The Nevada courts rejected Nasby's *Byford*-based habeas claim for a reason unrelated to the delay, confirming that he did not lose "something of value." *See Lewis*, 518 U.S. at 353 n.3. A delay in filing a meritless claim is not an actual injury. *Cf. Cromartie v. Shealy*, 941 F.3d 1244, 1258 (11th Cir. 2019) (no actual injury because underlying claims were barred by precedent); *White v. Kautzky*, 494 F.3d 677, 681 (8th Cir. 2007) (underlying claims were frivolous based on "applicable statutory law and controlling case precedent").

Nasby offers no reason, beyond speculation, to think that the Nevada courts would have reached a different decision had he filed his *Byford*-based habeas claim within a year of *Nika* instead of seven years later—indeed, the Nevada courts have conclusively held that no other result would have obtained. As his rejected claim is no longer arguable, it is therefore frivolous as that term is used in the context of an access-to-courts claim. We accordingly hold that Nasby lacks standing and do not reach the remaining issues on appeal.

IV

Because Nasby did not suffer an actual injury sufficient to confer standing to pursue an access-to-courts claim, the district court properly granted summary judgment to the defendants.

**AFFIRMED.**

---

Hurwitz, Circuit Judge, concurring in the result:

I agree with my colleagues that the district court's judgment should be affirmed. But I arrive there through a slightly different route. I believe that Nasby had Article III standing to raise a claim arising out of the alleged denial of access to the prison library, but that claim fails on the merits.

The starting point in the standing analysis is the Supreme Court's opinion in *Lewis v. Casey*, which holds that a prisoner has standing if a denial of access "hindered his efforts" to pursue a "nonfrivolous" claim. 518 U.S. 343, 351–53 (1996). The majority does not hold that Nasby, who contended that his state petition for post-conviction relief

was untimely because he was unable to learn of a relevant change in Nevada law, fails on the "hindrance" ground. Instead, it holds that Nasby lacked Article III standing because the claim he was hindered from pursuing was frivolous.[1]  Op. at Part III.  It is on that point that I believe the majority goes astray.

The majority relies on the Nevada Court of Appeals decision, which, although finding Nasby's petition for post-conviction relief time-barred, also rejected it on the merits. *Nasby v. State*, No. 70626, 2017 WL 3013073 (Nev. Ct. App. July 12, 2017).  But the fact that Nasby's claim failed on the merits does not render it frivolous.  Were that the case, we would be required "to try a case within a case . . . purely in order to resolve the threshold issue of standing." *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998).

Rather, to establish standing, "a plaintiff need not show that a claim with which a defendant interfered would have prevailed, but only that it was not frivolous." *Simkins v. Bruce*, 406 F.3d 1239, 1244 (10th Cir. 2005); *see also Lewis*, 518 U.S. at 353 n.3 (requiring only that the hindered claim be "arguable").  And the Nevada appellate court's order makes plain that the claim Nasby raised was far from frivolous.  Indeed, the court agreed with Nasby that his jury had not been properly instructed on the elements of first-degree murder, *Nasby v. State*, 2017 WL 3013073, at *1, but

---

[1]  Some courts have held that even if a denial of access to the prison library impedes a plaintiff's ability to bring a non-frivolous claim, there is no *Lewis* hindrance as long as the case is eventually heard on the merits, and the prisoner is not prejudiced in presenting it.  *See Simkins v. Bruce*, 406 F.3d 1239, 1244 (10th Cir. 2005); *Deleon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004) (per curiam).  Because the majority does not address that issue, neither do I.

denied relief because it found that the error did not prejudice him, *id.* at \*2.

Of course, the fact that a litigant has standing does not mean that he will be successful. The gravamen of Nasby's 42 U.S.C. § 1983 complaint is that the denial of access to the prison library caused his petition for post-conviction relief to be untimely, and his federal habeas petition to be procedurally barred. But, in the end, although affirming the state trial court's determination that the petition was untimely, the Nevada appellate court alternatively rejected it on the merits. *Nasby v. State*, 2017 WL 3013073, at \*1–2. And, in rejecting Nasby's 28 U.S.C. § 2254 habeas corpus petition, the federal habeas court, although finding a procedural default, also addressed the merits of his instructional-error claim and found no unreasonable application of federal law by the Nevada courts. *Nasby v. McDaniel*, No. 3:07-cv-00304-LRH-WGC, 2022 WL 980235, at \*24–26 (D. Nev. Mar. 30, 2022). A § 1983 action cannot be used to collaterally attack Nasby's criminal conviction, *see Heck v. Humphrey*, 512 U.S. 477, 484–86 (1994), or the district court's judgment in the habeas suit. Nasby is therefore in precisely the place he would have been absent the challenged hindrance—his non-frivolous claims have been considered by all courts before which he was entitled to raise them and rejected by those courts on the merits. I therefore concur in the result.